have before us for oral argument this morning two cases. The first case is Data Engine Technologies versus Google. Counselor Foster, are you? We have the other counselors here. We do? Yeah. What? I believe the first case is not here. Okay, well let's do this. I'm sorry, I thought it was the second case. That's okay. I'll take three minutes off your rebuttal. All right, let's proceed. Counselor Foster? Good morning. May it please the court. An issue in this case is the appeal of four patents which the district court found patent ineligible as a result of Google's motion for a judgment. I'd like to start today by discussing a recent opinion from this case, from this court, the core wireless case, which was issued after the briefings this matter was complete, so no party had the opportunity to close the case. Which case is that? The core wireless case. In core wireless... Have you shared that case with the opposing counsel? No, not at all. Okay, well when you're going to bring a new case up, it's best as a courtesy, not just to let the court know, but to let opposing counsel know as well. I appreciate it. Okay. In that case, the court was confronted with a user interface patent, and the particular patent in that case related to a user interface for a screen with limited capacity. It's targeted towards mobile devices or similar types of devices. What the patent does is it provides summary application data in sort of a menu on the main screen, and then the user clicks on the summary application data, and it brings up the full application data for the application. This court considered that patent and found it to be patent eligible at step one of the Alice analysis. It did so on the basis that the claims at issue disclosed a specific manner of displaying information to solve a specific problem identified in the patent as a problem in that particular technological space. The problem the patent identified is that it was difficult in the prior art systems for users to quickly and efficiently navigate to the particular screen or piece of information they were interested in. Were you done with the core wireless, or did you have more because I don't want to interrupt? The only other thing I'd say is I find it very difficult to distinguish this case from the facts of our case. Okay. Following on that theme, do you think that any mechanism that would facilitate navigation to, let's say, an unsophisticated user in a user interface would be patentable, or at least would satisfy the abstract idea test? So I don't think that's... Let me give you an example. We see icons all the time on our screens. They are designed to make it easier for those of us like me who don't really know, not very sophisticated in using computers, to see an icon that has a picture of a little phone there that that's the button you push in order to make the phone work. Would that be patentable, that icon? So if I understand the hypothetical correctly, you're confronted with a patent where they invent the use of icons. Right. They don't tell you how to do it in the sense that they is icons with a picture of a phone on it. That's my invention because it makes it a lot easier for people who are not sophisticated in the operations of computers to use a computer. So ultimately, I think that patent would probably pass muster at step one. Whether or not it does at step two would be a different question. But at step one, I think if it's solving a particular problem, it can identify in the art. If it says people don't use icons, they have to read text to figure out what the application is. And we've got a new approach to solving this user interface problem, namely making the right piece of information more quickly accessible to the user by having a pictorial representation. I think that probably satisfies step one after core wireless. Do you think that we should be looking at the time of the invention at all when we're considering step one and whether something's directed to an abstract idea or a technological innovation? I think the filing date in these patents is very early, 1992. So how does that play into our consideration today? Well, I think it's relevant to both prongs. I think it's probably more relevant to the second prong where the court needs to understand what's routine, conventional, and well understood. And in order to make that determination, you can't look at what the state of the art is today. You have to look at what the state of the art was at the time of patenting. What could happen in that intervening time, though, from 1992 until, let's say, today, that would render a claim that's directed to an abstract idea that would render that not directed to an abstract idea? I mean, isn't an abstract idea an abstract idea in 92 just as it probably would be in 2018? So I think that that's generally correct. Google's articulation of the test at step one I don't necessarily agree with is to look at what the step one to look at what the invention's claimed improvement over the prior art is. That's how they articulate the step one test. And to see if that claimed improvement and only that claimed improvement is abstract or not. But the Supreme Court analysis directed us under step one to determine whether the claims are directed to an abstract idea or a naturally occurring phenomena. Right. And I think under that to the time of the patent to make a step one determination, but I think you do. What about some of the language in EnFish that talks about we're supposed to, it's relevant to ask whether the claims are directed to an improvement to computer functionality as opposed to being directed to an abstract idea. Something that's an improvement in 1992 might not be improvement in 2017. And I think that's a very fair point. When we look at improving computer functionality or looking at the improving of the functioning of the computer in this case, I think there's a direct line you can draw from what this court said in EnFish to what this court said in Core Wireless. And in the very analogous case to Core Wireless, the trading technology case that we cited below, which is in EnFish you had a patent that purported to solve problems related to memory storage and the processing and efficient retrieval, which is one of the sort of basic functions that we all understand that computers do. And since it used general purpose software to improve the computer's functionality in that area, the court ultimately found that it was patent eligible as step one. In the Core Wireless case and in trading technologies, we're just looking at a different basic aspect of what computers do. In addition to storing and processing information, computers also have to take input and give output. And so these patents are improving the computer's ability to provide data and to receive data, which is just a basic function of computers. You've focused in your brief a lot on the fact that we're talking about tabs and not talking about generic modes of navigating. If the claims were directed not to tabs per se, but rather to means, passing means plus function for a moment, means for navigating through a multi-page spreadsheet, do you think that would be an abstract idea? If it was directed to any means? To means, yeah. It just used navigation. So I think that that probably would be an abstract idea. I think that what the Core Wireless case focuses on is a particularized configuration of the user interface. Because one of the claims at issue in this case seems to me to have that kind of language in it. Claim one of the 551 patent. Would you agree that that is abstract? If you don't have it, I agree that pertinent language is associating each of cell matrices with a user settable page identifier. Page identifier seems to me to be pretty generic. So I think that's more specific than the example that your honor just gave. Because here we still have a particular method of navigation. It's still important that in order to navigate from one sheet, well that the sheets are associated with user settable page identifiers. Well setting aside the user settable, which seems to me not a particularly important facet, but a page identifier is just a way of navigating from one page to another, is it not? Couldn't it be like row buttons across the top of the display, for example? It could be anywhere on the display. So claim one of the 551 is I think the only one of the claims in this case that doesn't include this interface limitation. And instead is directed at something a bit more general. So I would definitely say this claim is closer to the line, but I think it's a mistake to discount this user settable page identifier aspect of it. Especially given the state of the art at the time of this claim, the individual subspaces in the worksheet was not routine, conventional, and well understood. Now Judge Stuhl mentioned buttons, which it seems to me raises a question, in my mind at least, whether buttons, say arrayed along the edge of the sheet, would count as tabs. We don't have a claim construction in this case of tabs, but what is it your position with respect to what tabs are under these patents? Sure, so I think the patent makes clear that the effect of the invention is to have user interface elements that are immediately recognizable to the user and have a real world analog. So they're easy for the user to figure out how to use, how to navigate. Does that get me to tabs are different from buttons? Well, so the tabs in this case are functioning as... I'm actually asking you to say whether you're going to disclaim buttons to get to the bottom line. I don't want to, you know... So I think that tab is a subset of button. I think that there were things that... Yeah, but are buttons a subset of tabs? No, I think the buttons are a superset of tabs. Okay, so tabs, buttons would not be within the scope of these patents. If Google, of course, I guess the patents have all expired, but if Google previously had decided to go with buttons instead of tabs, you would have no case against them. Is that your position? If the user interface element that Google was using to navigate between pages was buttons and not tabs, we might have a read on this single claim of the 551, but otherwise, correct. How does this technology improve computer functioning or bring us closer to DDT and NINFIS in that it improves or resolves a technological problem with respect to technology, with respect to the computer? So the specification of the patents and all the patents in this case share a common specification. The specification recites at great length problems with users' ability to utilize an electronic spreadsheet system and identify the features. So let's say I would agree that this is an improvement of a spreadsheet electronically, but how does that improve computer functioning? How does that improve a problem that's specific to the functioning of computer technology? Because part of the function of computer technology is to be able to take an input from the person who's using the computer and give the person the right output that they're looking for. That's a basic function of computer technology in the same way that the ability of the computer to do math. That's a problem you have is that it's a basic function of computer technology. It seems that basically what we have here is a spreadsheet and you put it on a computer and say computer do it. So these claims don't claim the electronic spreadsheet. This is not the electronic spreadsheet application. I also think that based on the procedural posture of this case, the fact that we decided that this was decided on 12c, the specification specifically says that an electronic spreadsheet is a lot more and a lot different from just putting a paper ledger pad on a computer. And I think that those allegations and the specification of this procedural posture would have to be accepted as true. It's in the intrinsic record that this is more than just an electronic spreadsheet or a paper spreadsheet put onto a computer. Here's a lot of evidence that I think you had in your pleadings that it's I would consider in an obviousness case to be secondary considerations evidence including like a 1992 article from PC Magazine that talks about how this technology has made spreadsheets three-dimensional spreadsheets accessible and that a key to that is the use of tabs. How does that factor into our consideration today? Well I think looking at commercial acclaim and critical acclaim from the time of the patent is very important because you can see an objective take on what the product did, what it was good for at the time that it was made. And these sources, which we cite a lot of them in our briefing, what they say is they say this is an innovation. They say this is a new innovation in the 3D electronic spreadsheet context. That addresses step two, doesn't it? That is a step two argument, yes. And again just based on the procedural posture on this case, I don't think this case is exactly like the the Berkheimer decision and the other courts other recent decision in this area because here the majority of this information that we're citing to is intrinsic to the patent, not extrinsic. It's not allegations. What do you mean intrinsic? Is it evidence that's contained in the specification? It's evidence that's contained in the file history. What does it it doesn't matter anyway, right? Because under rule 12c the court is to consider whether there's a dispute of fact on step one and step two based on pleadings and any exhibits attached to the whether it's part of the prosecution history, part of the patent or not. So I think the difference there is exactly what this court should do with this case at step two. It's a question of whether we should get sent back down, be afforded an opportunity to replead and re-litigate this motion again on an amended complaint or alternatively whether this court can just look at the intrinsic record and make a step two determination. What's the evidence that you put before and I guess in your motion to amend that would indicate a change in the in the court's judgment and abuse of discretion standard? So all of the evidence that's in the record here, all of these the excerpt from the file history containing an affidavit by a gentleman named Jack Oswald and I'm in the record here at 979 where during the patent prosecution there was an affidavit which said this is a solution to a long-standing problem of how to represent three-dimensional spreadsheet information in a format which can be easily grasped by ordinary spreadsheet users. Moreover the spreadsheet notebook interface was widely considered by the industry and users to be the most important technological innovation in the field of electronic spreadsheets since the invention of the spreadsheet itself. Those allegations taken as true at the judgment on But you're not claiming the spreadsheet. We're claiming the important technological innovation in the spreadsheet namely our particular user interface. So tabs? Well you're not claiming you're not claiming the spreadsheets. Right we're claiming the tabbed user interface for you're claiming using the tab to electronically turn a page or to go to another part of the spreadsheet. The claims are substantially more specific than just using a tab. The claims are towards a particular mechanism of user interface. It's both the existence of the tabs. It's the ability to rename the tabs. It's the ability to use those names in your formulas and this is where I think the problems of hindsight bias come into effect. This user interface didn't exist prior to this patent and today it is the only user interface that anybody uses when they build a patent when they build a spreadsheet. Every other major commercial product adopted this user interface after it was released. And this um declaration that you're referring to from Mr. Oswald that's that's the that's 1994 right? So that's you're saying that was part of the original prosecution? That's correct. It was part of the prosecution. The tab patents in this case were all continuations of a prior application. This is from the prior application. I believe that patent is the 895. Okay you're you know yeah you're well into you both. All right thank you. Thank you. Mr. Josepher. Good morning and may it please the court. One thing that everyone seems to be able to agree on is that just taking an old idea from the paper and pencil world and moving it into a computerized context is not by itself patent eligible. And in Data Engine's own words to the district court that's what we have here. They told the court the inventors had the idea of importing a fairly old fairly understandable idea into the user interface of a 3D electronic spreadsheet. And because that's directed to an abstract idea and because there's no other inventive feature in the claims the claims are ineligible. I have a question for you. So um the district court's characterizes the idea that the claims are directed to in two different ways. I think it says that they could be directed to a broad idea of organizing information, displaying information. Then in a separate sentence says that it's directed to the idea of having tabs. Which do you think is the right way to characterize what these claims are directed to? I think it's I mean what the district court said the one I was going off of was using notebook style tabs to label and organize spreadsheets. So we're using the notebook style tabs to organize and display the information. There are different words combinations of words that add up to that but that is I mean in substance the abstract idea here. And I don't know that there's even any dispute about that. Well I wonder though why is the use of tabs which seems like a pretty specific and concrete notion. Why is that in what sense is that abstract? Well because it it's it's well say for example um I mean if it had said uh means of navigating then sure I understand that's abstract because it it isn't specific and concrete. But what tabs seem to me pretty concrete? Well no more so than say be in a number of different formats. But tabs particularly tabs as described in the patent of running down the edge of the page seems to me pretty specific isn't it? How would you get more specific? Well I guess there's two things. There's there's what the idea is and then there's whether there's some technological innovation. But focused on the word abstract which is the core notion from which we proceed. Why is tabs abstract? In what world is that an abstraction? Right so I mean the first thing I would readily admit is that the word abstract idea doesn't the ordinary meaning of abstract that people use in other contexts has never been particularly informative in this one. Um just but what what this court has looked to as being an abstract idea. We keep using it from the Supreme Court directed us to use it. Oh absolutely it's just what I mean is it doesn't just take a dictionary definition from a different company concept of abstract. And there are three three key data points on what why this idea is abstract. First it it is a method of organizing and using information. This court has consistently held that those types of methods are directed to abstract. But I thought you said it was directed to tabs because I just asked you what is it directed to? It's a specific I mean right it's it's tabs it's not it's using tabs to organize and display information in electronic spreadsheets just as tabs had always been used for the exact same purpose in paper spreadsheets. But it is still a method of doing that and second it's a very old one which this court is considered to be an important factor. And third it's not a it's it's not a technological solution or technological problem. What about the fact that the specification talks about how in the prior there was significant difficulty in navigating through three-dimensional spreadsheets because you had to enter in complicated commands and this is 1992 you might even have to put in dos commands or put in you know f2 control alt delete or something like this and you had to memorize those and now there was an easy way to do it. Why isn't that a technological solution to a technical problem? Because the same it's it's not computer centric and either the problem or the solution. Software does it have to be when you say computer centric do you mean hardware? No it doesn't I don't mean that either what I what I piece of paper there's you have the same problem you need to organize them to make it easier for the user to access them. So what do people do in the paper world? Put pages on top of one another tab them so you can easily go to one. Electronic then we have after electronic spread after paper spreadsheets we have electronic spreadsheets. With 3d electronic spreadsheets the exact same problem arose. Lots of sheets. How do you make it easy for the user to get to them? The solution the exact same one people had always used in the paper world. Tab them. Let the user choose the click on the tabs. A lot of what is referred to in the briefs strikes me as having over overtones of obviousness. So to tease that part of the case out and suppose that there had never been any use of tabs that the 1877 patent and all the prior and subsequent uses of tabs never happened. So the very first time any tab had ever been used was in this patent. Would you still say the use of tabs was abstract? It's a tough one because and here's why the use of tabs would still assuming that are still paper spreadsheets with you know lots of spreadsheets seem to organize you know any other historic facts. The solution of using tabs would still apply so equally solve problems in the paper. Right it's just that the problem had never been solved in the paper setting. Right. So would it still be abstract? I'm not sure because again if it's really not computer centric and the problem is the reason it's hard to get my head around it is that people would have had to be really obtuse for a very long time. Well of course they would but but that's you know it's a counterfactual but I understand it's hypothetical and I'm not I'm not being defied it's the reason it's so hard to analyze is that and the reason I haven't seen it is that. But if it is an abstract idea I mean if it's an idea that applies equally in context there's no computer centric to it and this is the other key point. It's different if there's a specific if there's some technological obstacle to be overcome in implementing it. If the idea here is to put tabs in a 3d electronic spreadsheet if there's some technological obstacle to be overcome and there's a specific technological way of making that happen being able to add this to a computerized context then it's a different setup. But I was just going to say here there's no indication whatsoever if there were as any technological obstacle to importing this old idea from the paper world to do exactly the same thing in this electronic context the patent applicant was blissfully unaware of any technological obstacles because the patent doesn't identify any and the claims don't don't afford to solve it. That all feels like invalidity not ineligibility to me. I mean it sounds like you're making an obviousness argument. Well there is some overlap between 101 and 103 I mean that's been phrased oftentimes. Even when we're looking at just whether something's directed to an abstract idea? Well I was going to say like at the first step one whether it's directed to an abstract idea you know honestly I thought that was going to be it I mean it just under this court's precedence you take an idea out of the paper world you put it into the electronic world to do the same thing that has been treated as directed to an abstract idea and the question and even if it's a just one of many organizational methods in say again IV against irredentity again it was a specific organizational method the court recognized maybe other ways of organizing but this one comes from the paper world it's doing the same thing here it's abstract let's find out there's some technical something technological about it. The difference though between obviousness and 101 which is really important is that if it's just a straight up 103 case the question would be is there anything obvious about the claims right and the non-obvious thing might be the unpatentable ineligible subject matter the abstract idea could give rise to I think there. The difference with 101 is that if a claim is directed to an abstract idea if we're in this category of cases we're talking about here after Alice the question then is is there something apart from the abstract idea some other feature which could just be in technology. Can I go back to just the idea of the abstract idea you're talking about this one of the things that I had asked the appellant was how does the time 1992 that this goes back to 1992 how does that factor into our analysis today bearing in mind that you've talking a lot about you've talked a lot about how you know just taking something and that exists in paper form and just putting it on a computer could be abstract but we're talking about 1992 and how much is that a technological innovation in 1992 don't we do we have to consider the time period when we're looking at the step one and step two analysis. I think the time period comes in I mean the most important thing to look at here is really the specification right so the specification is explained it does identify it's going to talk about the time period what's known what's not and so in that sense it becomes at least that way but the important thing here is right tabs used for the same purpose in the pen and paper context everyone has been around for 100 years as of 1992. 3d electronic spreadsheets the specification emphasizes that was also there and the the argument they've made in this court is that 3d electronic spreadsheets were a new and evolving evolving relatively new technology that created this problem when spreadsheets went 3d electronic you then had this problem with electronic spreadsheets same problem having paper spreadsheets so what does the next person come along do okay let's solve this new problem with the same old solution that's always been out there and so if we were back before there had been 3d electronic spreadsheets then we'd be talking about whether 3d electronic spreadsheets how do you respond to all the secondary considerations evidence including the 1992 pc magazine article that talks about I mean there's a lot of evidence here that touts how great these tabs are and how they make it so they have made three-dimensional spreadsheets usable I mean how do you respond to that because when you're talking about oh you're just taking something that was exists in paper and just putting it on the computer well because that well because it it doesn't matter whether you're the first to implement an abstract idea with general computer technology you know like in sequenom great invention first to do it still ineligible it's the same with abstract ideas if you're the first to get there in alice the problem wasn't that this was the second person to mitigate risk with the computer the problem is that it was just mitigating risk with the computer so even if they were the first to do it okay then it would not be novel I mean then it would be novel 102 to take care of but that doesn't change whether it's directed to an abstract idea with with nothing else in terms of a specific technological obstacle to be overcome in as one can tell from looking at the table of cases in the two briefs uh we have a lot of cases in this area now since since alice and some before yes what do you think well let me ask a two-part question first what do you think are your strongest cases in support of uh the judgment in this case number one and number two uh do you want to comment on core wireless yes thank you um in terms of good cases um in terms of others that involve computer interface is taking something old putting it analog i guess right and the three best there are affinity labs iv against um sorry affinity labs number one which is graphical user interface with a menu of options iv against capital one which was an interface for there are two capital one cases you mean the one in 793 uh three sorry the one involving an interface for displaying and organizing data okay i think that's the later one that i believe so yeah okay i think that's the later one and then iv against iri indemnity um i think the same point holds there about there um that indexing computer records where again you're taking organizational concepts in the paper world you're putting them in an interface but you're just having to do the same thing they used to do without any technological obstacles to be overcome and incorporating them what was the third case that you mentioned sorry iv against iri indemnity which is indexing computer records in a computerized context now semantec is important too because they're i mean for the claims were that were unanimously held to be ineligible it was electronic mail filtering electronic mail okay paper mail corporate mail rooms filtered paper mail according to rules and specifications and so forth then we came along and had electronic mail just as we now have electronic spreadsheets to paper spreadsheets the solution was filter the electronic mail using principles that were comparable to what had been used on the paper side the court unanimously held that's ineligible as a matter of law and it's the same point we're taking the solution from paper spreadsheets supposed to paper mail putting it over here for electronic spreadsheets supposed to electronic mail without anything technological obstacles to be overcome and marrying up the two and without any other separate inventive feature so those i think are our best cases and are pretty darn on point i think now with core with with the newer core wireless case it's very similar to the older trading technologies case the point there being that you have a problem that arose uniquely in a specific technological context with a solution that was then new for that technological context so for example in trading technologies the court went out of its way to emphasize the problem is created by electronic trading which was new and the solution then was also new for core wireless the problem was unique to very why isn't that the same here where you've got these three-dimensional spreadsheets and there's a problem in navigating through them because it's the same problem that you had with paper if i take a whole bunch of paper spreadsheets and they're all over the place how do i get from one to the next the answer is well stack them up so that it's easy to get a notebook and tab them so i can flip on a tab and there we have it there are a lot of other is there any evidence that people were using buttons like that to navigate in 1992 i can say well first yes but then i'm going to emphasize it's not an important part of what we do as our appeal the yes is that with lotus one two three and this is an intrinsic record they had cascaded when you know the old windows format you have cascaded windows with the page identifier identifiable for each and you click on the page identifier for a cascaded window to get to it that that's more of our 102 103 case um but in terms of eligibility which is why we for this motion we're giving them that this is the first time that anyone ever did this but to answer your question but for um for purposes of this case the point though is just that say that they were the first first people to put any form of button to use any form of button as long as buttons have previously been used in you know the real world for the same thing the idea of importing it over is the same as you had in Symantec as you had in in all the other you know three cases i just ran through you're just taking an idea from the paper world bringing it in the computer world do the exact same thing without any technical the key thing without any technological difficulty in marrying up the two okay thank you very much council will restore you back to four your time the first thing i want to say is i want to say if i had come in here today defending the first patent that claimed a paper physical tabbed notebook and i was facing a one-on-one challenge i think i would be very surprised whatever the words abstract idea mean they don't mean a physical concrete book and so the suggestion that i that a tabbed notebook is an abstract idea is always one i've struggled with it's why that 1877 patent is in the is in the claims and if you take a non-abstract idea and you put a non-abstract idea on a computer putting it on a computer doesn't render it abstract and so google tries to sidestep this problem by saying well you didn't invent tabs tabs are old but you you do you do know that that merely putting an abstract idea on a computer doesn't render it non-abstract correct but the situation we're dealing with here is sort of the converse of that it's a concrete non-abstract idea being imported into the computer context what's it what do you mean a concrete non-abstract idea i mean these are tabs a tab notebook how about a dog ear on a on a on a book it might not be very to the book that i read which in fact is is out there right you can dog ear a page on a book if you i think isn't that all isn't doesn't that all go to the abstract notion of organizing material in a way that you can access it easily no i don't think i don't think that it does i think these particular concrete innovations some of which yeah are these concrete organizational mechanisms are not abstract ideas so they're not abstract if they're sitting in a paper notebook they don't suddenly become abstract when you move them into the electronic context the other thing i wanted to say is are you saying then that uh generically claiming modes of organization uh may well be abstract but specific modes of claiming specific modes of of organization or indexing are not that's right all of the things that we were just talking about dog ear and tabs all the other organizational mechanisms would generally be described by the the concept of methods of organizing information i think that's an abstract idea i think if you take a this is not a method of organizing information this is a particular non-abstract system no no that's not what i have is this a method for organizing information tabs are a method of organizing information yes in the same way that any physical object is a individual type of some sort of an abstract idea we could say things to sit on that might be an abstract idea it doesn't make chairs abstract what do you think you could get a patent on let's say the dewey decimal system the library uh dewey decimal organizational system i think you probably could if you're the first person to design that particular if you're dewey and you're designing that particular system of indexing yes i think that's patentable i don't know how about how about organizing information according to the alphabet so i think there we're starting to tread into a different potential category of problems that may or may not be now in the realm of natural phenomenon or something of that nature because we're getting close to laws of nature and we're resumes i'm going to put all the a's first and underneath i'm gonna put the b's then the c's is that that's a method of organizing information that is a method of organizing and you would say that that's that's also a concrete uh non-abstract idea i think it's a concrete method of organization yes now we're getting more and more removed from a specific embodiment i think the difference is under this court's jurisprudence i think the dewey decimal system is a lot easier an argument to make than the abcd or you know a one two three four kind of organizational scheme but i think that it doesn't an idea doesn't become abstract because it's simple and it doesn't become abstract because it's old it becomes abstract because it's abstract that's the word we have to use the the the big issue that we have i think in these cases is that an abstract idea does not become non-abstract simply because it's used on the computer that's to me that's the big issue step one that's right and so again i think that this week we do have cases that say well in these instances an abstract idea is rendered non-abstract and that's what n fish is ddt right but those go for the towards the improvement of technology the functioning of a computer and and the and that's much different than what we have here i mean i don't i haven't heard yet that this this invention the use of the tabs improves the functioning of the computer that improves the technology or resolves a technological problem uh or barrier or challenge with respect to the functioning of the computer that is exactly what the claims say this patent specification says that this patent does it solves a problem with computerized electronic spreadsheets by using this particular user interface yes the solution here is specific to a type of software but it is improving the technological function of that type of software what uh mr josepher cited several cases um one other that comes to mind as being um at least on its face seeming to be favorable to his theory in this case is internet patents you cited that in your brief but what could you comment briefly on that case because that did involve an inner a user interface yeah uh for navigating through online in that case applications so i think the the question that that line of cases and the cases that uh my colleague cited and the cases we cite in our brief the distinction that's being teased out there is whether the display the results so in a number of the cases he cited like the the second of those iv versus capital one cases really what those claims are directed at is they're directed at doing some processing on xml and then just display the results to the user and so we're certainly not saying that any patent that happens to contain a display step suddenly is patent eligible but if you are claiming a particularized user interface to fix a particular problem in a case but it struck me that internet patents was more in the nature of using the icons to advantage for a user and so i think that that is that a fair characterization of the case i think that's a fair characterization of the of the claims in the case but i think the the distinction between this case in that case is that here we're claiming a the patents recite a very particular problem with the user interface and the solution activity the invention is to fix the user interface problem and i think that that is distinct from the internet patents case okay we thank you very much we thank the parties for the arguments in this case